**IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS**



TOM WEST, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY
SITUATED,

      *Plaintiff*

v.

NISSAN NORTH AMERICA, INC

      *Defendant*

Civil Action No. CV2011-0573-3

---

**SECOND AMENDED CLASS ACTION COMPLAINT**

COMES NOW Tom West, Plaintiff, on behalf of himself and all others similarly situated, and files this Second Amended Class Action Complaint against NISSAN NORTH AMERICA, INC. ("Defendant"):

I.

<u>INTRODUCTION</u>

1.     Plaintiff seeks certification of this action as a class action under Ark. R. Civ. P. 23.

2.     Defendant developed, designed, manufactured, assembled, tested, marketed, promoted, warranted, and distributed and sold 2004-2006 Nissan Armada and Titan trucks, and Infinity QX56 vehicles. These vehicles contain brake booster/modules containing the Delta Stroke Sensor which, due to defectively designed sensors, do not adequately function. This failure alone is problematic and harms Plaintiff and Class Members. But the defective component part also causes a failure in the system resulting in braking failures. At the latest, Defendant discovered this defect in May 2006 when they issued Technical Service Bulletin NTB06-040 purporting to "reprogram" around the manifest defect. Defendant withheld from its



own dealers any admission of responsibility for the defect. This permitted Defendant to avoid paying warranty claims in Arkansas. It also allowed for additional sales of the vehicles with no disclosure of the defect. After the May 2006 Technical Service Bulletin, Defendant became aware that the attempted "reprogramming" called for by NTB06-040 of the defective part did not fix the defect. The only fix for the manifest defect was replacement of the brake booster/module at an approximate cost of $1,000. Armed with this additional knowledge, Defendant refused to pay warranty claims, failed to disclose the defect to existing owners, and failed to disclose the defects to new purchasers—all to the financial benefit of Defendant.

3. The purpose of this action, once certified as a class action, is to right these wrongs Defendant has done to Plaintiff Tom West ("Plaintiff"), residents of Miller County, Arkansas, and thousands of Arkansas owners just like them.

4. The defects complained of herein manifest from day one off of the assembly line, and existed at the moment of purchase of the Class Vehicles. Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

5. The defect in the Plaintiff's and Class Vehicles occurred within the vehicle, regardless of whether the defect resulted in a failure.

6. Defendant has had actual notice of the defects but remains unwilling to cure at its expense or otherwise acknowledge and accept responsibility for the defects. When presented with like claims by people other than Plaintiff and Class Members, and unknown to Plaintiff and Class Members, Defendant has not honored its warranties, contracts, or obligations to vehicle owners to replace or repair the defect. As such, Defendant should be estopped from asserting any defense of lack of presentment of the defect because such presentment has been futile.

7.      Due to the defects, there exists a difference in value between (1) the Class Vehicle sold to Plaintiff and the Class Members and (2) the Class Vehicle Defendant represented to the Plaintiff and the Class Members.  Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

8.      Upon purchase, Plaintiff and the Class Members received the Class Vehicle with less value than what was represented and for which they paid.  Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

9.      Due to the defects, there exists a difference in value between (1) the price paid for the Class Vehicle and (2) the Class Vehicle's actual value when received by Plaintiff and the Class Members. Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

10.      Upon purchase, Plaintiff and the Class Members received the Class Vehicle with less value than the price paid.  Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

11.      Due to the defects and upon purchase by Plaintiff and the Class Members, Defendant wrongfully obtained from Plaintiff and the Class Members a value over the worth of the Class Vehicle.  Accordingly, at the moment of sale, Plaintiff and the Class Members were injured.

II.

## CLASS DESCRIPTION

12.      Under Ark. Civ. P. 23, Plaintiff seeks certification of the following class of vehicle owners (the "Class Members" or the "Class"):

*Any "owner" or "subsequent owner" of 2004-2006 Nissan Titan and Armada trucks, and Infinity QX56 vehicles who registered their vehicle in the State of Arkansas.*

Excluded from the Class are the following individuals or entities:

a. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out will be formally established by the Court;

b. Any and all federal, state or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivisions;

c. Any currently sitting Arkansas state court judge or justice in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

(d) Any person who has given notice to Defendant by service of litigation papers or otherwise, and alleged he or she has suffered personal injury or collateral property damage due to an alleged defect in the braking component described herein in the Class Vehicles described herein;

(e) Any person, "owner" or "subsequent owner" who had the defect repaired at the dealer's expense.

### III.

### PARTIES

13. The named Plaintiff, Tom West, is a resident of the State of Arkansas, residing in

Miller County, Arkansas at all times relevant to this action.

14. Defendant is a corporation registered to do business in Arkansas and may be

served through its counsel of record.

### IV.

### JURISDICTION AND VENUE

15. This Court has jurisdiction over this action and venue is proper because

Defendant does business and market their products within Miller County, Arkansas; Tom West,

the named Plaintiff, is a resident of Miller County, Arkansas; and sustained the damages and harm as alleged herein in Miller County, Arkansas.

16.    **NOTICE OF NON-REMOVABILITY AND SANCTIONS**: There is no basis for federal-question jurisdiction under 28 U.S.C. §1331.    Plaintiff, as putative Class representative and individually, admit, represent and stipulate that he excludes any cause of action which would create federal question jurisdiction and make this case removable on that basis.

17.    Plaintiff also as putative Class representative and individually, admits, represents and stipulates that the amount in controversy as to Plaintiff and each member of the Class is less than $75,000.00, exclusive of interest and costs, as further explained in the sentences and paragraphs below. Accordingly, this matter is not removable on the basis of complete diversity under 28 U.S.C. §1332(a)

18.    Neither is this matter removable on the basis of the Class Action Fairness Act of 2005 ("CAFA"). *E.g.* 28 U.S.C. §1332(d).    Plaintiffs, as putative Class representatives and individually, admit, represent and stipulate that the maximum final, total, aggregate judgment they will seek on behalf of the Class, as Class representatives, and regardless of the theory of recovery on which judgment is based, will be $4,999,999.00, and that in the event any additional factors (*e.g.*, without limitation, exemplary damages, statutory penalties, statutory or common fund attorneys' fees, class representative incentive award(s), equitable recoveries, pre-or post-judgment interest, recovery of court costs or the like) might otherwise engender a final Class judgment amount or recovery in excess of $4,999,999.00, that they are not, on the Class's behalf, seeking any judgment or recovery of any amount in excess of $4,999,999.00, that they   disclaim any such excess amount, and that they, on the Class's behalf, will not accept any final judgment

recovery or award in excess of $4,999,999.00, such that those additional factors should not be considered at all by the Court in rendering final judgment.

19.     Further, undersigned putative Class counsel admits, represents and stipulates that they are not seeking any award of attorneys' fees, common fund or otherwise, which would cause, in any way, the final judgment in this matter to exceed the sum of $4,999,999.00, and they specifically disclaim any such any attorney fee claim or award.

20.     These representations, stipulations and admissions above are enforceable under, without limitation, the Arkansas law relating to judicial estoppel, the doctrine against inconsistent positions, the binding effect of stipulations, and the pleading of damages under Ark. R. Civ. P. 8(a), or otherwise.  The enforceability of these damages-related representations, stipulations and admissions precludes removal of this case under CAFA due to lack of any subject matter jurisdiction conferred by CAFA.  E.g. *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069 (8th Cir. 2012); *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009)(in discussing CAFA's application, noting Arkansas procedural rules permit a Plaintiffs to plead his or her sought-after damages with specificity); *Clark v. Welspun Tubular LLC*, No. 5:11-cv-321, 2012 U.S. Dist. LEXIS 17836 at (E.D. Ark. Feb. 14, 2012)("The Court denies the motion to remand. The complaint does not include a comprehensive stipulation capping recovery in all forms.")[1] Any attempt by Defendants to remove this case in light of well settled precedent would be frivolous, will harm Plaintiffs and the putative class with unnecessary delay, costs and fees, and will force Plaintiffs to seek sanctions, attorneys' fees and costs.  Sanctions, attorneys' fees and costs would be appropriate in that non-removability of this case as plead is well settled and not a matter of academic or jurisprudential nuance. *See, Bell v. Hersey Company,* 567 F.3d 953, 958

---

[1]     Here, in contrast, this Complaint <u>does</u> contain a comprehensive stipulation capping recovery in all forms at $4,999,999.00.

(8th Circuit 2009); *Murphy v. Reebok International, Ltd.,* 2011 U.S. Dist., LEXIS 46983*;*

*McClendon, et al. v. Higgs,* 2011 U.S. Dist. LEXIS 89266*; Thompson, et al, v. Apple, Inc.,* 2011

U.S. Dist. LEXIS 73861.

V.

GENERAL FACTUAL ALLEGATIONS

21.     Defendant manufactured and sold to Arkansas residents, including through

dealers in Arkansas the following: 2004-2006 Nissan Titan trucks, 2004-2006 Nissan Armada

trucks, and 2004-2006 Infinity QX56 vehicles , collectively described as "Class Vehicles."

22.     The modules originally installed on the Class Vehicles are defectively designed in

that they fail to function as designed, and the Delta Stroke Sensor and brake booster/module

required replacement.  The failure manifested itself upon each use, but may have also been

evidenced by the brake light coming on, the ABS light coming on, brake pedal vibration and

unacceptable and unsafe degrees of braking failure. This defect is harmful to Plaintiff and Class

Members, and is something that occurs or manifests itself each time the Class Vehicles are

operated—regardless of whether an ultimate failure occurs.

23.     Defendant is aware that the defect leads to a condition whereby the signal to the

brakes fails completely, leading to the ultra-hazardous condition of no effective braking capacity

on the Class Vehicles.

24.     Defendant is aware that the only fix for the manifest defect is to replace the brake

booster/modules containing the Delta Stroke Sensor at an approximate cost of $1,000.

25.     Defendant does not list the brake booster/module and/or incorporated Delta

Stroke Sensor as "wear out items" in their vehicle technical specifications.  Therefore, they

should not fail or need replacing but for the defects.

26.     Defendant had actual notice, or at the very least constructive notice, of the defects in Class Vehicles as early as 2006, well before this lawsuit was filed. Plaintiff and Class Members provided additional notice of their defective brakes to Defendant by filing a lawsuit, or by complaining to Defendant directly, or to Defendant's dealer-warranty repair agents, that their Class Vehicles contained a defect and needed repair. Plaintiff and Class Members have otherwise fully complied with and satisfied all conditions precedent, if any, to maintaining this action against Defendant.

27.     For Plaintiff and existing Class Members with the defects, Defendant continues to fail to acknowledge the defect or the defect's unacceptable, serious dangers and pay for the repairs.

28.     On May 12, 2006, a significant period after Defendant received notice of the defect, Defendant published technical service bulletin NTB06-040. It was in this bulletin that Defendant first tacitly acknowledged, but not to Plaintiff or Class Members, its responsibility for the defect, noting the "brake warning light is or was on and/or the ABS warning light is or was on and/or there is or was a vibration* in the brake pedal while braking. *This vibration is the rapid consistent speed pedal pulsation that is felt when the ABS is activated." However, this bulletin attempted to "reprogram" the defect. It did not and does not work.

29.     Defendant has never conducted a recall related to the defect.

30.     Defendant has failed to provide a notice of any kind to Plaintiff or the Class Members regarding the dangerous defect and its effect on braking. Defendant failed to send the technical service bulletin to any Class Vehicle owner. Defendant failed to instruct its dealers to notify Class Vehicle owners of the dangerous defect. Instead, Defendant concealed the dangerous defect from its consumers like Plaintiff and the Class.

31.    However, as Defendant is aware, Federal Motor Vehicle Safety Standards ("FMVSS") and relevant state laws require functional brakes at all times.  In addition, applicable Nissan owners' manuals are rife with warnings and instructions regarding the Class Vehicle brakes, and specifically the importance of their proper and safe function at all times.  Given its obvious and critical safety-related function, it is common knowledge that the single most important safety piece of equipment on a vehicle is properly functioning brakes.

## VI.

### FACTUAL ALLEGATIONS:  PLAINTIFF TOM WEST

32.    In 2006, Plaintiff purchased and took delivery of a 2004 Nissan Titan truck (the "West vehicle") from Pete Mankins.  Plaintiff still owns the vehicle.  At the time Plaintiff bought the West vehicle, Defendant was aware of the defects at issue in this case.

33.    During Plaintiff's ownership of the vehicle, Plaintiff used the brake and it has malfunctioned.

34.    The West vehicle is a Class Vehicle in that it falls within the description of 2004-2006 model year Nissan Titan pickups equipped with the defective part(s).

35.    The West vehicle was originally equipped with brake booster/modules containing the Delta Stroke Sensor.  The West vehicle is still equipped with the defective part(s).

36.    Plaintiff cannot afford to repair the defect.

37.    The defective brake on the West vehicle is defectively designed, and exhibits additional manifested characteristics of the sensor defect referenced throughout this complaint.

## VII.

### CAUSES OF ACTION:  PLAINTIFF TOM WEST AND THE CLASS

(A)    Fraudulent Concealment/Failure to Disclose.

38.     The allegations set forth in paragraphs 1-37 herein are incorporated into this section by reference as if set forth verbatim.

39.     Due to the inequality of condition and knowledge on the part of Defendant versus the Plaintiff and Class Members, Defendant's silence about the defect is actionable fraud.

40.     The knowledge of the defect was peculiarly within the knowledge of the Defendant and was of such a nature that Plaintiff and the Class Member were justified in assuming its nonexistence.

41.     Defendant concealed and continues to conceal the defective Delta Stroke Sensor incorporated in the brake booster assembly and responsibility for it from vehicle owners, dealers and prospective vehicle purchasers.

42.     Given the circumstances, the events surrounding Defendant's denial of the defect, Defendant's withholding of information from dealers, and Defendant's overall scheme and strategy to prevent disclosure of the defect, Defendant owed a duty to Plaintiff and Class Members to speak and fully inform them of the nature of the defect, and Defendant's responsibility for the defect under both express and implied warranties that Plaintiff and Class Members had acquired in conjunction with purchasing Plaintiff's vehicles and/or Class Vehicles.

43.     When and if Defendant learned that any of its previous representations regarding the defect were false, it has a duty to correct the representations or fully disclose its knowledge of the defect.

44.     Defendant's failure to speak to Plaintiff and Class Members is equivalent to a fraudulent concealment and amounts to fraud just as much as an affirmative falsehood.

45.     Defendant's fraudulent concealment caused or proximately caused damages to Plaintiff and Class Members as set forth below.

46.     Defendant's fraudulent concealment also operates to equitably toll the limitations period applicable to all causes of action asserted by Plaintiff and Class Members herein. This is especially true since the defect can result in an ultra-hazardous, catastrophic scenario of complete brake failure.

47.     Plaintiff and the Class Members could not have and did not learn of the Defendant's fraud until after the filing of the *Banks* case.

(B)     Breach of Express Warranty.

48.     The allegations set forth in paragraphs 1-47 herein are incorporated into this section by reference as if set forth verbatim.

49.     On April 25, 2011, suit was filed against Defendant in the Northern District of California and entitled, *Banks, et al. v. Nissan North American, Inc., et al.*, 4:11cv02022, United States District Court for the Northern District of California, Oakland Division. In the *Banks* case, the plaintiffs there alleged the same defects as issue in the present case. In the *Banks* case, the plaintiffs initially sought a nationwide class action—which, if certified, would have included the vehicle purchased by Plaintiff and the Class Members for the State of Arkansas. Pursuant to Arkansas Code Annotated § 4-2-607(3)(a), The *Banks* original complaint provided Defendant notice "within a reasonable time after [Plaintiff] discovered or should have discovered any breach." After the filing of the *Banks* case, Defendant did not cure the complained of harm to the class of affected owners. Instead, Defendant denied that a defect(s) existed or the *Banks* class members were entitled to relief. Plaintiff filed the present suit following the filing of *Banks.* Plaintiff further alleges presentment of any notice has been shown and is futile because of Defendant's failure to acknowledge a problem with the Class Vehicles.

50.     The defects complained of herein manifested from day one off of the assembly line, and existed at the moment of purchase of the Class Vehicles. Accordingly, Plaintiff asserts the defects complained of herein occurred within the original warranty period. Because of Defendant's fraudulent concealment of the defect, Defendant is *estopped* from asserting the defense of statute of limitations as to breach of warranty because (a) Defendant's actions of affirmative fraud, deception, or concealment (intentional or unintentional) of fact caused Plaintiff and the Class Members to relax their vigilance or deviate from inquiry; (b) Plaintiff and the Class Members were unaware of the defects; (c) Plaintiff and the Class Members were unable to undertake any action to accomplish the benefit of the warranty; and (d) Arkansas Code Annotated § 4-2-725(4) provides that § 4-2-725 "does not alter the law on tolling of the statute of limitations."

51.     Plaintiff owns the West vehicle and has since 2006. The West vehicle is registered in Arkansas and is operated in the United States. The Class Members each own 2004-2006 Nissan Armada and Titan trucks, and Infiniti Q456 vehicles. They have registered those vehicles in the State of Arkansas.

52.     The Class Vehicles had an express basic coverage warranty from Defendant with a warranty coverage period of 3 years or 36,000 miles, whichever occurs first. In addition, the Class Vehicles had a Powertrain warranty of 5 years or 60,000 miles that covered the defects herein complained. The warranties cover repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty coverage period. With their vehicle purchases, Plaintiff and the Class Members all received identical express warranties from Defendant, either through the basis coverage or powertrain coverage.

53.     The express warranties became part of the basis of the bargain in the course of Plaintiff purchasing the West vehicle.

54.     At the time of purchase and delivery, and within an applicable warranty period, the West vehicle had a defective Delta Stroke Sensor incorporated in the brake booster assembly. The defect manifested itself from the date it left the manufacturer and each time the West vehicle was driven—although it may not have evidenced itself to West sufficient for him to make a warranty claim. At the time of purchase and delivery, the Delta Stroke Sensor incorporated in the brake booster assembly on all Class Vehicles owned by Class Members was defective. The defects are still present and manifest themselves each time Class Members drive their vehicles. Manifestation of the defect, however, may not be noticeable to Plaintiff and the Class Members or result in complete failure.

55.     The defect in Plaintiff's Delta Stroke Sensor incorporated in the brake booster assembly has also resulted in the brake warning light being on or staying on, and/or the ABS warning light being on or staying on, and/or there is or has been a vibration in the brake pedal while braking. Further, the defect results in a dangerous and unacceptable spectrum ranging from brake shuddering to complete braking failure.

56.     The defective Delta Stroke Sensor incorporated in the brake booster assembly obligated Defendant to provide warranty remedies under the terms of the express warranty from Defendant that Plaintiff and Class Members acquired upon purchase of their vehicles.

57.     Defendant has breached the express warranty by not making repairs as it is obligated to do.

58.     The circumstances – among others, Defendant's intentional delay and withholding information regarding the brake defect from their dealers and Plaintiff – have caused any

exclusive or limited remedy in Defendant's warranty document to fail of its essential purpose in that Plaintiff and Class Members were unable to make warranty claims during the actual warranty period due to Defendant's fraudulent concealment and denial of the defect and warranty coverage.

59.     Defendant's breach of the express warranty caused or proximately caused damages to Plaintiff and the Class Members as set forth below.

(C)     Unjust Enrichment.

60.     The allegations set forth in paragraphs 1-59 herein are incorporated into this section by reference as if set forth verbatim.

61.     By concealing the defective Delta Stroke Sensor incorporated in the brake booster assembly and responsibility from vehicle owners, dealers and prospective vehicle purchasers, Defendant unjustly enriched itself at the expense of Plaintiff and Class Members, all of whom, under those warranties, were entitled to have the defective Delta Stroke Sensor incorporated in the brake booster assembly in their Class Vehicles replaced or otherwise remedied.

62.     Due to the defects and Defendant's knowledge of same, Defendant was unjustly enriched because of the difference in value between (1) the Class Vehicle sold to Plaintiff and the Class Members and (2) the Class Vehicle Defendant represented to the Plaintiff and the Class Members.

63.     Due to the defects and Defendant's knowledge of same, Defendant was unjustly enriched because Plaintiff and the Class Members received the Class Vehicle with less value than what was represented and for which they paid.

64. Due to the defects and Defendant's knowledge of same, Defendant was enriched because there exists a difference in value between (1) the price paid for the Class Vehicle and (2) the Class Vehicle's actual value when received by Plaintiff and the Class Members.

65. Due to the defects and Defendant's knowledge of same, Defendant was enriched because Plaintiff and the Class Members received the Class Vehicle with less value than the price paid.

66. Due to the defects and Defendant's knowledge of same, Defendant was enriched because Defendant wrongfully obtained from Plaintiff and the Class Members a value over the worth of the Class Vehicle.

67. Defendant has received monies from Plaintiff and the Class Members under such circumstances that, in equity and good conscience, Defendant ought not to retain it.

68. Because of this unjust enrichment, Defendant should be disgorged of amounts wrongfully retained and/or required to make restitution to Plaintiff and Class Members of benefits received, retained or appropriated.

69. Such restitution of benefits received, retained or appropriated is just and equitable.

70. Any express contract upon which a defense could be raised "does not provide an answer" or remedy for Plaintiff and Class Members.

71. Any express contract upon which a defense could be raised "does not fully address the subject" matter of this suit and equity may impose a remedy to further the ends of justice.

72. The equitable relief asserted is not inconsistent with any express contract upon which a defense could be raised.

73.     Pleading in the alternative, Plaintiff and Class Members have no adequate remedy at law, thus making his assertion of unjust enrichment all the more appropriate.

(D)     Violation of the Arkansas Deceptive Trade Practices Act.

74.     The allegations set forth in paragraphs 1-70 herein are incorporated into this section by reference as if set forth verbatim.

75.     The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. Section 4-88-101, *et seq.*, is designed to protect consumers from deceptive, unfair, and unconscionable trade practices.   The ADTPA is a remedial statute, which is to be liberally construed in favor of consumers.

76.     The practices employed by Defendant in selling the defective Class Vehicles are false, deceptive, unfair, unconscionable, and misleading.   Defendant's failure to disclose the defect to consumers is deceptive, unfair, unconscionable, and misleading

77.     The defective Class Vehicles are "goods" and the parties are "persons" within the meaning of the ADTPA.

78.     Defendant's wrongful actions relating to distribution, marketing, and sale of the defective Class Vehicles violate Ark. Code Ann. Sections 4-88-107(a)(1), (3), and (10), and 4-88-108(1) and (2).

79.     Defendant was in a superior position relative to Plaintiff and Class Members to know the existence of the defect in the Class Vehicles.   Defendants acted with the intent to cause consumer reliance on its material omissions.

80.     Defendant's violations of the ADTPA resulted in Plaintiff and the Arkansas-citizen Class ("consumers") purchasing Defendants' defective products.

81.     Plaintiff and Class Members suffered actual damages as a result of Defendant's deceptive and unfair trade acts and practices, and such harm can be measured by any of the following damage models: "benefit-of-the bargain," "out-of-pocket," or restitution.

VIII.

## CLASS ACTION ALLEGATIONS

82.     The allegations set forth in paragraphs 1-81 herein are incorporated into this section by reference as if set forth verbatim.

83.     The Class as defined herein, involving owners of Class Vehicles described herein, is so numerous that joinder of all members is impracticable.  Ark. R. Civ. P. 23(a)(1).

84.     There are questions of law or fact common to that class, such as, but without limitation:

> BREACH OF EXPRESS WARRANTY:  Whether, based on the terms of Defendant's written limited warranty, the design flaw in the Delta Stroke Sensor incorporated in the brake booster assembly in Class Vehicles constitutes a "vehicle defect related to materials or workmanship occurring during the "Warranty Period."

> UNJUST ENRICHMENT:  Whether Defendant, by defectively designing the Delta Stroke Sensor incorporated in the brake booster assembly and concealing the defect to avoid paying warranty claims, have unjustly retained benefits that it should restore to Plaintiff and Class Members.

> FRAUDULENT CONCEALMENT:  Whether Defendant, once it acquired knowledge of the defect, and based upon all the circumstances, was clothed with a duty to speak to then-existing owners of Class Vehicles so they could obtain relief.  In addition, whether Defendant, once it acquired knowledge of the defect, and based upon all the circumstances, owed a duty to speak to prospective purchasers of Class Vehicles, alerting them to the existence of the defect.

> VIOLATION OF ADTPA:  Whether Defendant, by defectively designing the Class Vehicle, concealing the defect, and selling the Class Vehicle to

Arkansas consumers has violated certain terms or provisions of the ADTPA.

DAMAGES: Whether Plaintiff and Class Members have suffered and are entitled to damages.

RESTITUTION: Whether Plaintiff and Class Members are entitled to restitution based on, without limitation, Defendant's unjust-enrichments-related misconduct and/or having previously paid for repairs to the defective Delta Stroke Sensor incorporated in the brake booster assembly.

Accordingly, the commonality requirements are satisfied. Ark. R. Civ. P. 23(a)(2).

85.     The claims and defenses of the representative party, Plaintiff Tom West, is typical of the claims or defenses of Class Members. Ark. R. Civ. P. 23(a)(3).

86.     Plaintiff Tom West will fairly and adequately protect the interests of Class Members. Ark. R. Civ. P. 23(a)(4). Representative counsel are qualified, experienced and can generally conduct this class-action litigation. There is no evidence of collusion or conflicting interest between Plaintiff Tom West and the Class Members. Finally, Plaintiff has reviewed the pleadings in this matter, and understands the allegations against Defendant. Plaintiff has also educated themselves on a general level concerning Defendant's business and engineering practices that are the subject of this litigation. Plaintiff is very much interested in obtaining relief for himself and Class Members in Arkansas. He has and will stay in touch with representative counsel during this litigation, understand his duties as a class representative, and is willing to comply with them. He is not at all reluctant to assist with discovery requests, participate in oral discovery, and generally assist representative counsel with the decisions that need to be made during the course of this litigation.

87.     Questions of law or fact common to Class Members predominate over any questions affecting only individual members. Ark. R. Civ. P. 23(b). A common, overarching factual or legal inquiry, especially one centered on the Defendant's breach of a uniform

obligation to Class Members or its fraudulent, common failure to disclose and concealment affecting the Class generally, will satisfy Rule 23(b)'s predominance requirement. Moreover, an overarching factual or legal inquiry creates predominance, even though individual issues concerning matters such as Class-member knowledge, detrimental reliance or damages may exist.

88.     Defendant's defectively-designed Delta Stroke Sensor incorporated in the brake booster assembly and Defendant's subsequent cover-up to avoid paying warranty claims, all as alleged herein, is precisely the type of overarching factual and legal inquiry or matter that satisfies the Rule 23(b) predominance requirement under Arkansas class action procedure.

89.     A class action is superior to other available methods for the fair and efficient adjudication of Defendant's acts or omissions in connection with the defect.

90.     The Court possesses wide discretion to find superiority. Moreover, the relief sought by Plaintiff and Class Members is relatively small if sought on an individual basis. Accordingly, it is not economically feasible for Class Members to pursue Defendant individually. Further, the possibility of multiple trials supplying inconsistent results and wasting judicial resources favors class action superiority, as does the fact that numerous meritorious claims might go unaddressed absent class certification. Finally, this class action presents no problems from a manageability standpoint.

## IX.

### DAMAGES/DISGORGEMENT/RESTITUTION

91.     The allegations set forth in paragraphs 1-90 herein are incorporated into this section by reference as if set forth verbatim.

92.     Plaintiff and Class Members seek appropriate money damages in an amount necessary to remedy the defective Delta Stroke Sensor incorporated in the brake booster assembly in Plaintiff's vehicles and in each of the Class Vehicles owned by Class Members, including loss of transportation during the diagnostic and repair period.  Plaintiff and Class Members, in terms of obtaining "benefit of the bargain" type relief, "out-of-pocket" type relief, or restitution allege this amount will restore their vehicles to the "as warranted" or "as represented" status or values.  See e.g. UCC §2-714(b).

93.     Alternatively, for Class Members who have previously paid out of their own pocket for repairs of the defect, without reimbursement from Defendant, Plaintiff seeks out-of-pocket money damages in the amounts each such Class Member has actually paid.

94.     Alternatively, based on Defendant having been unjustly enriched, Plaintiff and Class Members seek disgorgement and restitution from Defendant in an amount necessary to remedy the defect in Plaintiff's vehicles, as well as in each of the Class Vehicles owned by Class Members.

95.     Plaintiff and Class Members seek recovery of their reasonable and necessary attorney fees and costs.

96.     Plaintiff and Class Members seek recovery of any available pre- and post-judgment interest.

97.     Plaintiff and Class Members seek such other and further relief, both at law and in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

## X.

### PRAYER

98.     WHEREFORE, PREMISES CONSIDERED, Plaintiff and Class Members respectfully pray that the Court:

a.      Certify this action as a class action as permitted by Ark. R. Civ. P. 23, appoint Plaintiffs class representative, and Plaintiff's counsel class representative counsel;

b.      Conduct a trial on the merits and, thereafter, enter judgment against Defendant in favor of Plaintiff and Class Members consistent with the damages amounts, restitution and/or other relief requested herein.

c.      Grant Plaintiff and Class Members such other and further relief, both at law and in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

Respectfully Submitted,

JIM WYLY
State Bar No. 90158
SEAN ROMMEL
State Bar No. 94158
WYLY~ROMMEL, PLLC
4004 Texas Boulevard
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Facsimile)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served by electronic mail on this 14th day of June, 2012 to Defendant's counsel listed below:

Damon Young
Young Pickett
4122 Texas Boulevard
Texarkana, Texas 75503

G. Charles Nierlich
Timothy W. Loose
Gibson, Dunn & Crutcher
555 Mission Street, Suite 3000
San Francisco, California 94105-2933

_____
JIM WYLY